1 | William M. Aron (SBN No. 234408)
**ARON LAW FIRM**
2 | 15 West Carrillo Street, Suite 217
3 | Santa Barbara, CA 93101
Tel: (805) 618-1768
4 | bill@aronlawfirm.com

5 | *Attorneys for Plaintiff and the Class*

6 | [Additional Counsel Listed on Signature Page]

7

8

9 | **UNITED STATES DISTRICT COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA**

11

12 | ALIN POP, individually and on behalf of all those similarly situated, | Case No.: 8:25-cv-311

13 | Plaintiff,

14 | v. | **CLASS ACTION COMPLAINT**

15 | JAXXON, LLC., | **JURY TRIAL DEMANDED**

16 | Defendant.

- 1 -

CLASS ACTION COMPLAINT

Plaintiff, ALIN POP, on behalf of himself and all those similarly situated, by and through his counsel, William Aron, Bogdan Enica and Keith L. Gibson, brings this Class Action Complaint against JAXXON, LLC., alleging as follows:

**INTRODUCTORY STATEMENT**

1. This is a nationwide class action seeking monetary damages, restitution, injunctive and declaratory relief from Defendant JAXXON LLC., ("Defendant" or "Jaxxon") for illegally promoting JAXXON products on social media using undisclosed paid endorsements from various influencers.

2. With millions of users all over the United States, in the last ten years, social media became the place to be. Due to mostly unregulated activity, it quickly grabbed the attention of those perpetrating "get rich quick" scams and other illegal behavior.

3. This action is arising from the deceptive, unfair and misleading promotion of JAXXON products throughout the United States via social media platforms like Instagram.

4. During the Class Period (defined below), many influencers misrepresented the material connection they have with JAXXON by promoting, endorsing, and recommending JAXXON products without disclosing the fact that they were paid to do it, a practice that is highly unfair and deceptive.

5. In in order to artificially inflate the prices for the JAXXON products, JAXXON devised a scheme in which carefully selected influencers will endorse the JAXXON products, by tagging or recommending them, while pretending they are disinterested consumers.

6. While having large audiences, the influencers involved are not known to a significant portion of the viewing public, none of them having over 10 million followers.

7. Among the influencers deceptively promoting and endorsing JAXXON are: Alexis Reynoso, Emily Sears, Emily Tanner, Georgina Mazzeo, Kaylyn Slevin, Madisynn Whisler, Mariana Morais, Natalia Barulich, Nicole Cruz, Pauline Jackson, Sammy Draper, Sofia Baverly, Taylor Gallo, and others.

8. JAXXON products are sold online, with most of their customers being social media users exposed to undisclosed endorsements and misleading advertising.

9. Relying on the undisclosed endorsements and misleading advertising, Plaintiffs and the Class Members (defined below) purchased JAXXON products and paid a premium, while the JAXXON products purchased proved to be of a lower value than the price paid.

10. Plaintiff filed this action to recover the difference between the price paid and the market value of the products as purchased.

**JAXXON**

11. JAXXON began in 2017 when its owners "bought a handful of chains, shot photos and opened a Shopify website."[1]

12. Following their increased popularity on social media, especially Instagram, and due to many social media influencers endorsing JAXXON products, the brand expanded, and it is now producing everything from sport chains to watches, both for men and women.

13. JAXXON claims to have "over 1 million happy customers" as of the date of the Complaint. (https://jaxxon.com/collections/mens-best-sellers).

14. The boom JAXXON experienced could not have been possible without the "sales power" provided by the influencers that claimed that they love JAXXON or that JAXXON is the only brand they wear:



"when it comes to chains, I only wear @JAXXON" states Natalia Barulich, making sure she adds a heart to the statement made on an Instagram post[2].

15. However, this statement does not only represent undisclosed endorsement, but it is

---

[1] ACCESS Newswire, "The Origin Story of Leading Men's Jewelry Line, Jaxxon: Creating a Trustworthy Brand with Grit and Commitment," ACCESSWIRE Newsroom, September 28, 2021, https://www.accessnewswire.com/newsroom/en/business-and-professional-services/the-origin-story-of-leading-mens-jewelry-line-jaxxon-creating-a-t-665960. (Accessed: 4 February 2025).
[2] Post available at https://www.instagram.com/p/C3GeJz4PDVe/ (Accessed January 27, 2025)

also blatantly false. A cursory search on Natalia Barulich Instagram profile shows that, she also wears, for example, chains by David Yurman and makes a point to tag the brand:



Instagram post available at https://www.instagram.com/p/CuLJyMLSpUv/

16. While it is now clear that the influencers love the free gifts (and the financial compensation they receive for wearing JAXXON), their followers are led to believe that they purchased the product and wear it because they love it. This is a textbook example of deceptive advertising.

17. JAXXON does not have brick-and-mortar stores in the U.S. and historically relied on online sales, most of which are generated by the undisclosed advertising on social media.

18. Other brands in the same market, like *Craftd* and *GLD* are consistently offering lower prices or better quality than JAXXON. An analysis of identical products that were offered on both JAXXON and other athleisure brands shows that the prices on JAXXON website are usually 10-40% more than those of their competitors for the same quality products.

19. While competitors like *Craftd* are also using influencer marketing, there is a stark difference in the way these companies act on social media. *Craftd*, for example, is asking the influencers to properly disclose the material relationship with the brand by using the "Paid

Partnership" label and #ad tag to comply with the FTC interpretation of the FTC Act.

"#ad"

"Paid partnership"

20. On the other hand, JAXXON and the Influencers are omitting altogether any reference of the fact that the post is not the Influencer's honest opinion, but rather undisclosed advertising and paid endorsement.

**THE UNDISCLOSED ADVERTISING**

21. While the practice employed by JAXXON and the social media influencers is very profitable, it is, nevertheless, illegal. Federal law and California law prohibit such commercial behavior.

22. Tags in social media posts, demonstrations, depictions of the name, signature, likeness or other identifying personal characteristics of an individual, and the name or seal of an organization can be endorsements. *See.* 16 C.F.R. § 255.

23. The influencers are knowingly posting depictions of themselves wearing JAXXON, while mentioning the name of the brand and posting the brand's tag in their social media post (both on the caption and on the picture).

24. Plaintiff saw JAXXON products being worn or used by some of the Instagram influencers he followed which led to him purchasing JAXXON products, which proved to be of an

- 5 -

CLASS ACTION COMPLAINT

inferior value compared with the expectations Plaintiff had and the premiums he paid for the JAXXON products.

25. By looking at the social media posts, prior to making their purchases, Plaintiff was unable to discern the fact that those posts were paid posts, rather than organic, honest recommendations and endorsements by the influencers.

26. But for the false endorsements by the influencers and the misleading claims (that the influencers only wear JAXXON, for example), Plaintiff and the Class Members would not have purchased JAXXON products at the price they purchased it for.

27. In deciding to purchase JAXXON products, Plaintiff and Class Members followed what they believed to be the honest advice of the influencers. None of the posts Plaintiff saw mentioned, as required, that the influencers are nothing more than paid advertisers for the brand.

28. In most of the posts, social media influencers will only tag JAXXON in their posts, suggesting that this is their choice for jewelry, and watches.




Sample of Instagram posts endorsing JAXXON

29. Sometimes the Influencers will specifically indicate that the JAXXON products are their favorite chains, bracelets or watches, or express their unconditional love for the brand.

CLASS ACTION COMPLAINT

30. This undisclosed advertising and false endorsements have been present on Instagram in the last few years. At the request of JAXXON, many influencers have been advertising and endorsing JAXXON products on Instagram for many years, without mentioning even once that they are paid (substantial amounts) to advertise JAXXON and keep it quiet.

## NATURE OF THE ACTION

31. Plaintiff, Alin Pop, on behalf of himself and all those similarly situated Class Members, seeks damages, declaratory judgment, permanent injunctive relief, disgorgement of ill-gotten monies, attorney's fees and costs, and other relief from Defendant JAXXON, LLC for unjust enrichment, fraud, negligent misrepresentation, violations of the FTC Act, 15 U.S.C. § 45(a), and, therefore, violations of the state laws, violation of California Unfair Competition Law, violation of California False Advertising Law, violations of California's Consumers Legal Remedies Act.

## PARTIES

32. Plaintiff, Alin Pop ("AP"), is a citizen of Florida who resides in Broward County FL and is otherwise *sui juris*. Alin Pop purchased JAXXON products and paid a premium as a direct effect of undisclosed endorsements by Influencers.

33. Plaintiff brings this action on his behalf and on behalf of all other persons similarly situated class members.

34. Defendant JAXXON is a company registered and headquartered in California with its main place of business at 691 Randolph Ave, Costa Mesa, CA 92626, doing business worldwide and around the United States, including in Florida and California. JAXXON owns the website https://jaxxon.com/, the corresponding mobile application, and the @jaxxon Instagram account, /JaxxonCo Facebook account, @Jaxxonjewelry Twitter account.

## JURISDICTION AND VENUE

35. This is a national class action, including every online purchaser of JAXXON Products

36. JAXXON revenue is over $5 million per year, a good part of which can be directly attributed to the undisclosed endorsements received on social media, therefore the estimated damages in this case are of at least US$5,000,000.

37. The Nationwide Class, as defined below, is comprised of at least one million people who purchased JAXXON products during the Class Period.

38. This Court has jurisdiction over this matter under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a proposed class action in which: 1) there are at least 100 class members; 2) the combined claims of Class Members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs; and 3) Defendant and Class Members are citizens of different states.

39. The Court also has jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's related state law claims.

40. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1). Defendant JAXXON is headquartered in the Central District of California.

**STATEMENT OF FACTS**

41. Social media emerged in the last years as a main source of information and communication[3] for billions of users.

42. There were an estimated 159 million Instagram users in the United States in 2022[4].

43. In 2021 the platform engaged over 2 billion monthly users[5]. With 2 billion monthly

---

[3] Fink, T., 2021. *Drivers of User Engagement in Influencer Branding*. [S.l.]: Springer Fachmedien Wiesbaden, p.2.
[4] Statista. 2021. *Leading countries based on Instagram audience size as of October 2021*: http://www.statista.com/statistics/578364/countries-with-most-instagram-users/ (last visited Oct 28, 2022).
[5] Rodriguez, S., 2021. *Instagram surpasses 2 billion monthly users while powering through a year of turmoil,* https://www.cnbc.com/2021/12/14/instagram-surpasses-2-billion-monthly-users.html (last visited Oct 28, 2022).

active users and over 500 million daily active users, Instagram is the third most popular social media platform worldwide.[6]

In the last ten years, Instagram has become one of the most popular ways to influence consumer behavior on social media. Since 2017, Instagram has grown tremendously, adding 100 million users every few months[7]. Around seven-in-ten Americans ages 18 to 29 (71%) say they use Instagram.[8]

44.     Given the enormous reach of the social media platforms, and in an effort to curb online behavior that ignores the law and uses the lack of enforcement as an excuse for violating laws across jurisdiction, the FTC has published guidelines for influencers regarding proper advertising practices[9].

45.     Indeed, the rapid growth of social media platforms, including Instagram, allowed for lack of regulation and oversight.  Some 80% of social media users said they were concerned about advertisers and businesses accessing the data they share on social media platforms, and 64% said the government should do more to regulate advertisers[10].

46.     This is because some unscrupulous "influencers" are acting as advertisers for hire, making it a habit of posting fake reviews for sponsored products or failing to disclose the fact that they were paid to create the content displayed on their profile. More than often, these "influencers" would advertise everything from alcohol to cannabinoids, from political ideas to illegal giveaways, as long as they are paid the obscene amounts they are demanding.

---

[6] https://www.demandsage.com/instagram-statistics/ (last visited Feb 11, 2025).
[7] Farhad Manjoo, *Why Instagram Is Becoming Facebook's Next Facebook* The New York Times, April 26, 2017, https://www.nytim`es.com/2017/04/26/technology/why-instagram-is-becoming-facebooks-next-facebook.html (last visited Oct 28, 2022).
[8] Schaeffer, K., 2022. *7 Facts About Americans and Instagram*. Pew Research Center. https://pewrsr.ch/3FqryHE (last visited Feb 11, 2022).
[9] Federal Trade Commission. 2019. *Disclosures 101 for Social Media Influencers*. Available at: https://www.ftc.gov/system/files/documents/plain-language/1001a-influencer-guide-508_1.pdf (last visited Oct 28, 2022).
[10] Raine, L., 2022. *Americans' complicated feelings about social media in an era of privacy concerns*. http://www.pewresearch.org/fact-tank/2018/03/27/americans-complicated-feelings-about-social-media-in-an-era-of-privacy-concerns/ (last visited Feb. 15, 2022).

47. According to this business model, a number of carefully selected influencers will pretend to use products from JAXXON brands and present this fact to their followers, while being properly compensated, without disclosing any material relationship with any JAXXON entity.

48. The marketing and sales strategy and the misleading claims above were developed by JAXXON in California and implemented or otherwise distributed at the direction of its staff located in California. Also, JAXXON warrants and oversees regulatory compliance and product distribution from California.

49. Plaintiffs and Class Members purchase such products at inflated prices, exclusively because of the way the JAXXON products are advertised on social media and the misleading content of the advertisement.

50. Despite being compensated for pretending to use and promoting JAXXON brands, none of the influencers use the "paid partnership" label suggested by the FTC or any other disclosure of a material connection with JAXXON (i.e. #ad, #sponsored, #paid, etc.)

51. Therefore, the influencers fail to be compliant with the FTC Act as interpreted by the FTC found in 16 C.F.R. § 255.5 and the FTC guidelines regarding advertising on social media.[11]

52. Plaintiff is "following" many influencers advertising JAXXON on Instagram. Plaintiff's decision to purchase JAXXON products and pay a premium for those products was determined by the influencers he followed, and the fact that they promoted JAXXON products.

53. Plaintiff purchased a Round Box Chain - 2mm from JAXXON that was shipped on 07/28/2022. Plaintiff placed his order online and paid $79.00 plus tax to a total of $84.53. The Order was shipped from 20131 Ellipse Foothill Ranch, CA, 92610-3002.

54. Plaintiff would not have purchased the JAXXON products if he knew that the

---

[11] Federal Trade Commission, *supra* note 9.

influencers he followed were paid to endorse JAXXON.

## THE ADVERTISING

55. Facebook, the parent company of Instagram offers various products that advertisers can use for commercial use. For example, an advertiser may promote content using a *boosted post* or an *Instagram ad* for a price paid directly to Facebook. Both the *post* and the *ad* are created by the advertiser that wants to promote a certain message, service, or product. They are clearly marked as advertising by Instagram.

56. The same advertisers can also promote content by directly paying influencers to create a collaboration post. Influencers can also be paid for ads to be posted on the influencer's account, as part of the *grid* (the pictures and videos displayed for a user when accessing or refreshing an account) or as part of *stories* (short videos that only show for a limited amount of time and, usually, can only be viewed once). Such collaboration is usually properly disclosed.

57. Another way Instagram allows advertisers to use the platform is by sponsoring independent content generated by the influencers themselves. In this case the influencer should take advantage of the "paid partnership" tag offered by Instagram to show that influencer is being compensated to generate this content. A "paid partnership" tag is also a step in maintaining compliance with the Federal Trade Commission's ("FTC") rules and guidelines.

58. Since, at times, Instagram algorithms may spot and remove posts where the "paid partnership" tag is not present, influencers and JAXXON are going to great lengths to hide the nature of their partnership.

59. Every time an influencer advertises a product, such advertisement appears in the Instagram *feed* of everybody following the influencer.

60. The FTC has repeatedly made public guidelines for influencers regarding proper advertising practices, publishing a plain language interpretation of the FTC Act.

61. As recognized by the FTC, "[c]ompanies that use deceptive endorsements and reviews inflict an injurious double whammy. They harm consumers with misleading tactics that subvert their choices at check-out. And they take business away from honest competitors that work hard to comply with the law."[12]

62. By advertising JAXXON products without regards to the disclosure requirements, the influencers are in violation of 15 U.S.C. § 45(a) and therefore in violation of the "little FTC Acts" enacted IN California.

63. By instructing and allowing the influencers to advertise its products without making the proper disclosures, JAXXON is in violation of of 15 U.S.C. § 45(a) and therefore in violation of the "little FTC Act" enacted in California.

64. Given the fact that JAXXON products are endorsed by many of the influencers he followed, after seeing the undisclosed advertising, Plaintiff decided to purchase various JAXXON Products.

65. Plaintiff and the Class Members purchased JAXXON products and paid a premium for them.

## CLASS ALLEGATIONS

66. Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully re-written herein.

67. Plaintiff asserts the counts stated herein as class action claims pursuant to Fed. R. Civ. P. 23.

---

[12] Ritchie, J.N.& A. *et al.* (2023) *FTC and endorsements: Final revised guides, a proposed new rule, and an updated staff publication*, *FTC.gov*. Available at: https://www.ftc.gov/business-guidance/blog/2023/06/ftc-endorsements-final-revised-guides-proposed-new-rule-updated-staff-publication (Accessed: 07 September 2023).

68. Plaintiff is filing this lawsuit on behalf of all persons that purchased JAXXON products online relying on misleading marketing practices and Influencers from June 24, 2019, to present ("Class Period").

69. Plaintiff is a citizen of Florida and seeks to represent one class composed of and defined as follows:

<u>Nationwide Class</u>: All consumers that purchased JAXXON products in the United States.

70. Collectively the members of the Nationwide Class shall be referred to as "Class Members"

71. The classes exclude counsel representing the class, governmental entities, Defendant, any entity in which Defendant has a controlling interest, Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, any judicial officer presiding over this matter, the members of their immediate families and judicial staff, and any individual whose interests are antagonistic to other putative class members.

72. Plaintiff reserves the right to amend or modify the class descriptions with greater particularity or further division into subclasses or limitation to particular issues.

73. This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure 23 ("Rule 23") because it is a well-defined community of interest in the litigation and the class is readily and easily ascertainable.

74. <u>Numerosity</u>: At least one million consumers have been injured by Defendant's deceptive marketing practices, including the named Plaintiff. At least one million consumers have purchased JAXXON products and paid a premium for it in reliance on the Defendant's misrepresentations.

75. The class represented by the named Plaintiff has at least one million members and the joinder of all members is impracticable.

CLASS ACTION COMPLAINT

76. <u>Typicality</u>: Plaintiff's story and his claims are typical for the class and, as the named Plaintiff is aware of other persons in the same situation. Plaintiff and the members of the class sustained damages arising out of Defendant's illegal course of business.

77. <u>Commonality</u>: Since the whole class purchased JAXXON products and such products are promoted the same way by Defendant, the questions of law and fact are common to the class.

78. <u>Adequacy</u>: Pop will fairly and adequately protect the interests of each class he represents.

79. <u>Superiority</u>: As questions of law and fact that are common to class members predominate over any questions affecting only individual members, a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

**VIOLATIONS OF 15 U.S.C. § 45(a)**
(not pled as an independent cause of action)

80. By failing to disclose their material connection with the brand, the influencers are in violation of 15 U.S.C. § 45(a).

81. By failing to mandate and enforce disclosure of material connections with the influencers, JAXXON is in violation of 15 U.S.C. § 45(a).

82. The violations of the 15 U.S.C. § 45(a) are not pled as an independent cause of action, but as an element of one or more of the causes of action detailed in this Complaint.

**COUNT I: VIOLATION OF THE CONSUMERS LEGAL REMEDY ACT. CAL. CIV. CODE. §§ 1750, *ET SEQ*.**
**(On behalf of Plaintiff and the Nationwide Class)**

83. Plaintiff incorporates by reference paragraphs 1-82 of this Complaint as if fully re-written herein. Plaintiff asserts this count on his own behalf and on behalf of the Nationwide Class, as defined above, and pursuant to Rule 23.

84. The conduct that forms the basis of this action arose in California, the state in which JAXXON has its headquarters and principal place of operations.

85. Defendant developed, designed, and implemented policies and procedures at issue in this case in California.

86. Defendant is a "person" within the statutory meaning of Cal. Civ. Code § 176l(c).

87. Defendant provided "goods" within the meaning of Cal. Civ. Code §§ 1761(a), 1770.

88. Plaintiff and Class Members of the Nationwide Class are "consumers" within the meaning of Cal. Civ. Code §§ l76l(d), 1770 and have engaged in a "transaction" within the meaning of Cal. Civ. Code §§ 1761(e), 1770.

89. As set forth herein, Defendant's acts and practices, undertaken in transactions violate §1770 of the Consumers Legal Remedies Act in that:

    a. Defendant misrepresented the source, sponsorship, approval, or certification of the goods or services.

    b. Defendant misrepresented the affiliation, connection, or association with, or certification by another.

    c. Defendant represented that the goods or services have approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have; and

    d. Defendant advertised goods or services with intent not to sell them as advertised.

90. Pursuant to the provision of Cal. Civ. Code §1780, Plaintiff seeks an order enjoining Defendant from the unlawful practices described herein, a declaration that Defendant's conduct violates the Consumers Legal Remedies Act, and attorneys' fees and costs of litigation.

**COUNT II: VIOLATIONS OF CALIFORNIA'S UNLAWFUL BUSINESS PRACTICES ACT, CAL. BUS. & PROF. CODE § 17200. *ET. SEQ***
**(On behalf of Plaintiff and the Nationwide Class)**

91. Plaintiff incorporates by reference paragraphs 1-82 of this Complaint as if fully re-written herein. Plaintiff asserts this count on his own behalf and on behalf of the Nationwide Class, as defined above, and pursuant to Rule 23.

92. The conduct that forms the basis of this action arose in California, the state in which JAXXON has its headquarters and principal place of operations. Defendant developed, designed, and implemented policies and procedures at issue in this case in California.

**Unfair And Fraudulent Competition**

93. Defendant has engaged in unfair competition within the meaning of Cal. Bus. & Prof. Code §§17200, et seq., because Defendant's conduct is unlawful, unfair, and/or fraudulent, as herein alleged.

94. Plaintiff, the class members, and Defendant are each a "person" or "persons" within the meaning of § 17201 of the California Unfair Competition Law ("UCL").

95. Defendant promoted and advertised JAXXON products without properly disclosing influencer's financial interest and such acts and practices constitute deceptive acts or practices in violation of Section 5(a) of 15 U.S.C. § 45(a).

96. A violation of Section 5(a) of 15 U.S.C. § 45(a) represents a *per se* violation of the California Unfair Competition Law ("UCL").

97. In the alternative, failure to disclose paid sponsorships and endorsements represents conduct that violates California Unfair Competition Law ("UCL").

**Unlawful Competition**

98. The UCL is, by its express terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes and/or common law remedies. Plaintiffs hereby incorporate by reference all prior causes of action into this cause of action.

CLASS ACTION COMPLAINT

**Violations of Advertising Law**

99. By making statements that are not true and statements that are misleading, Defendant is in violation of California False Advertising Law, Cal. Civ. Code. §§ 17500, *ET SEQ*.

100. "'[A]ny violation of the false advertising law . . . necessarily violates the UCL.'" (*Kasky, supra*, 27 Cal.4th at p. 950.) Section 17500 "proscribe[s] '"not only advertising which is false, but also advertising which [,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public."(*Colgan v. Leatherman Tool Group, Inc*. (2006) 135 Cal.App.4th 663, 679.)

101. Plaintiff and the Nationwide Class Members request that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and Class Members any monies Defendant acquired by unfair competition, including restitution and/or equitable relief, including disgorgement or ill-gotten gains, refunds of monies, interest, reasonable attorneys' fees, and the costs of prosecuting this class action, as well as any and all other relief that may be available at law or equity.

102. Plaintiff and Class Members seek attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

**COUNT III: UNJUST ENRICHMENT**
**(On behalf of Plaintiff and the Nationwide Class)**

103. Plaintiff incorporates by reference paragraphs 1-82 of this Complaint as if fully rewritten herein. As set forth above, Plaintiffs assert this count on their own behalf and on behalf of all other similarly situated Instagram users.

104. By paying the high prices demanded by JAXXON, Plaintiff and Class Members conferred a direct benefit to Defendant.

105. Instagram users that are members of the class continue to suffer injuries as a result of the Defendant's behavior. If the Defendant do not compensate Plaintiff and Class Members, it would

be unjustly enriched as a result of its unlawful act or practices.

106. It is an equitable principle that no one should be allowed to profit from his own wrong, therefore it would be inequitable for the Defendant to retain said benefit, reap unjust enrichment.

107. Under California law, one person should not be permitted to unjustly enrich himself at the expense of another and should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution is made.

108. Since the Defendant unjustly enriched itself at the expense of the Instagram users, members of the Nationwide Class, Plaintiff requests the disgorgement of these ill-gotten money.

109. Due to Defendant's conduct, Plaintiffs and the Class Members are entitled to damages according to proof.

**COUNT IV: NEGLIGENT MISREPRESENTATION**
**(On behalf of Plaintiff and the Nationwide Class)**

110. Plaintiff incorporates by reference all paragraphs 1-82 of this Complaint as if fully rewritten herein. As set forth above, Plaintiff asserts this count on his own behalf and on behalf of all other similarly situated persons pursuant to Rule 23.

111. Defendant had a duty to be truthful in its commercial speech. In convincing Plaintiff to purchase JAXXON products, Defendant made representations and endorsements that it knew to be false or negligently failed to examine the veracity of the affirmations.

112. As a result of Defendant's negligent misrepresentations, Plaintiff and the Nationwide Class Members suffered injury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Alin Pop, respectfully request that judgment be entered in his favor and in favor of the Class Members as follows:

a. Certifying and maintaining this action as a class action, with the named Plaintiff as designated class representatives and with their counsel appointed as class counsel;

CLASS ACTION COMPLAINT

b.  Declaring the Defendant in violation of each of the counts set forth above;

c.  Awarding Plaintiffs and those similarly situated compensatory, punitive, and treble damages in excess of $5,000,000;

d.  Awarding Plaintiffs and those similarly situated liquidated damages;

e.  Order the disgorgement of ill-gotten monies;

f.  Awarding the named Plaintiff a service award;

g.  Awarding pre-judgment, post-judgment, and statutory interest;

h.  Awarding attorneys' fees and costs;

i.  Awarding such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a jury trial of the claims asserted in this Class Action Complaint.

Dated: February 17, 2024

Respectfully submitted,

/s/ William M. Aron
William M. Aron (SBN No. 234408)
**ARON LAW FIRM**
15 West Carrillo Street, Suite 217
Santa Barbara, CA 93101
Tel: (805) 618-1768
bill@aronlawfirm.com

Keith L. Gibson (*Pro Hac Vice* forthcoming)
KEITH GIBSON LAW, P.C.
586 Duane Street, Suite 102
Glen Ellyn, IL 60137
Telephone: (630) 677-6745
Email: keith@keithgibsonlaw.com

Bogdan Enica (*Pro Hac Vice forthcoming*)
KEITH GIBSON LAW, P.C.
1200 N Federal Hwy, Ste.300
Boca Raton FL 33432
Telephone: (305) 306-4989
Email: bogdan@keithgibsonlaw.com

*Counsel for Plaintiff and the Putative Class*

CLASS ACTION COMPLAINT